The first is 2023-2218. Ms. Maynard. Good morning, Your Honors, and may it please the Court, D. Ann Maynard on behalf of Novartis. The claims of the 659 patent are precise and narrow, claiming two specific chemical compounds without reciting function or result. In holding these claims, nevertheless, lacked adequate description. The District Court overlooked the difference between what the claimed invention is and what might infringe comprising claims like these, and relied on inapposite case law involving functional or results claiming. But could I start you where you started? Can I go back a little? It's like, how did this claim construction come about? And what in your view, the claim construction now, do you construe it as including complexes? No, Your Honor. The claim construction is nothing but the plain text of these precise claims. The claim construction. I'm not asking you what you think the claim construction is. I'm asking what the Court construed the claims as meaning. That the Court, the claim construction, the Court construed the claims as just nothing more than the precise, than the precise claim language. It was the, the history of it was, Judge Post, the other side sought to read in to the, to the claims language. It wasn't there. They sought to limit the wherein clause to separate mixtures. And the District Court rejected that and said, no, just the claim language. So, Valsartan plus Secubitrol, where the two are administered together in a one-to-one combination. That's the invention of this claims. It's a, it's a very defined, precise invention. And our position has been consistent since the beginning. But why, but if you're saying the District Court construed the claims to only include compounds and not complexes, why did he get to where he was in terms of the written description? No, Your Honor. The, the claims were just given their plain meaning. They were just, they weren't, there was no, the construction was just the plain text of these claims. Okay. And, and the view is, let me just step back for a minute. So the, our view was all along, at claim construction, is that you can't read in any form into these claims. That the patent makes clear, it's in the middle of Column 10, that the form is irrelevant. The invention here is that when you put Valsartan together. Okay. I get that. Okay. But what, so you say the Court construed them as plain and ordinary meaning. Exactly. But in applying that construction of plain and ordinary meaning, was he not construing the claims to cover complexes? Well, cover, well yeah, cover in what sense, right? It, it, it reads on a complex because a complex of Valsartan and Secubitrol, which is joined by non-covalent bonds, includes the invention of this patent. But it's not the invention of this patent. Your point, your point is that whether it covers complexes for an infringement purpose is irrelevant. We're talking about written description. And the compound, and the claim recites a composition consisting of two compounds. And those are recited in the specification. And that's written description. Precisely, Your Honor. And no one disputes that Valsartan is described by chemical name and structure. Secubitrol is described by chemical name and structure. And the wearing clause, which is the clause to which they tried to add language, Judge Prost, just simply says where they're put together in a one-to-one ratio. But did the, I'm just trying to understand. Yeah, I'm sorry. I want to help you. Yeah. And in reaching the conclusion he did with respect to written description, am I incorrect that he applied a construction that would include complexes? I see maybe where you're getting at. So he, he required that we had to describe complexes, even though that's not the claimed invention of this patent? Does that answer your question? Because where he, where I think he went wrong and where he was confused is because complexes infringe this patent. Because a complex of Valsartan and Secubitrol that's put together in a one-to-one ratio is an improvement on this patent. It includes the invention of this patent. And so the district court, because it infringes, the district court thought that we had to describe that as well. But that's not the invention. So this is unlike Chiron, which is the principal case he relied on. In Chiron, what was happening there was very different. The patentee in Chiron was trying to claim later improvements to monoclonal antibodies as their original invention. It was trying to re-language back into the specification and claim that as an invention. That's not what we're doing here. This is the base invention. And the basic invention is Valsartan plus Secubitrol in a one-to-one ratio provides benefits for heart treatment. It's basic, but it also seems open-ended at another level in that following within written description, according to your argument, would be any complex that's invented in the future using these two drugs. Well, if our invention were included in a later improvement, then it might infringe. But we don't have to describe those later improvements in this patent. It's been long-standing law and it's straightforward that you can have a basic invention, no more than when the first compound, when Valsartan, is created. And then someone comes along and says, Whoa, if you put Valsartan together with Secubitrol, that's an effective heart treatment. No one would argue that you have to describe the combination, now that we know about that, in the Valsartan patent. And this is no different. That's what they're trying to do here. They're trying to say, well, someone, this is a comprising claim, so it's open-ended in that sense, Judge Reyna, but that supports our point. It's a pharmaceutical composition comprising Valsartan, Secubitrol, and a one-to-one ratio. The form, and our expert testified, Dr. Klibanoff, and it's undisputed, our expert testified that the form of the compound would be immaterial to a person of skill in the art. That's an A3471-72. So you mentioned Chiron. I mean, again, I'm talking about what was in the district court's head and what he did.  So do you think he correctly applied Chiron according to his thinking? Because he seemed to be saying that complexes are included in the claim scope, and it doesn't matter for purposes of enablement because of what Chiron said. He read Chiron to say, even if it's later technology, if it's later technology and it's included in the claims, we're concluding the claims, you don't have to describe it. You don't have to enable it. Was that a weird application of Chiron? Chiron is just fundamentally different from this case. He applied Chiron both in written description and enablement. I think he's right that we didn't have to enable a future arising invention, a new way to make this form of the compound that was invented here. That's correct. That's correct under Chiron. That's correct under other precedent from this court, U.S. Steele and Hogan. But he was incorrect, and where he went wrong is he was mixed up about what the claimed invention is. And the claimed invention, as the second paragraph of 112 makes clear, is just the recited elements. So the claimed invention is Valsartan and Secubitril in a one-to-one ratio. The fact that someone has now added to that non-covalent bonds and improved it, that's a later invention, and our patents included in that. Is that why you didn't appeal the claim construction, and you think that's correct because under a claim construction of plain and ordinary meaning, it was just different, but you didn't have to appeal that? No. Was it not clear to you at the time that he was going to construe the claim as covering complexes as well? We argued at claim construction, Judge Prost, exactly what I'm arguing today, which is that the claims are precise and narrow. I understand what you argued. My question is what he decided. So the disreport at claim construction suggested, you know, because they wanted to limit the claims to separate compounds, even though nothing in the patent or the intrinsic record would suggest the form matters or that it's material to the invention or that it's so limited. This is a claim to a chemical compound. We said that's the wrong construction. You shouldn't read that in. The plain language is the right reading, and you can't – that doesn't exclude complexes because a complex includes this invention. So we recognized at claim construction that they were going to make this argument, the written description argument, that the disreport documents. That argument brings you face-to-face with Chiron. So how do you distinguish that case here? So Chiron is different, Judge Reyna, because Chiron they were claiming the later improved monoclonal antibodies in a way by function. So they were trying to read into their original claims and get priority back to the original claims for the later arising invention. That's not what we're doing. This is not a claim to a complex. This is a claim to a chemical compound that has valsartan plus the cubitril in a one-to-one ratio. It's not a claim to a compound. It's a claim to a composition. Thank you. Consisting of two compounds. That's correct. Thank you for the correction, Judge Lurie, but my point stands. This is a claim to a pharmaceutical composition including two structural elements. So I feel like I still haven't answered your question, Judge Prost or Judge Reyna. Chiron is different because Chiron they were trying to... It's different in two ways, right? The Chiron patentee was claiming any monoclonal antibody that bonds. Theirs was a functional claim, and they were trying to say their original patent claimed the later improvement. It was the invention, they were saying, of the earlier patent, and they wanted to get priority and read that in. We're doing neither of those things. We're saying this is a basic improvement. This is a basic patent of valsartan plus the cubitril in a one-to-one ratio, and that is both described and enabled to a person of skill in the art in 2002, to a person of skill in the art today. It means the same thing. It's valsartan plus the cubitril in a one-to-one ratio in no particular form. The problem with Chiron is that they were seeking to claim new matter under the old patent. Exactly, and we're not doing that. We're not saying this patent claims the complex. We're saying that a complex. But now you're left without any authority other than these other cases that deal with enablement. Well, no, U.S. Steel was both written description and enablement. It addressed both, and it's completely on fours with what we're saying here. So that case was. . . We have to look at this separately. We cannot say enablement and written description is the same thing. Enablement. . . Well, so we have two arguments where we're right on each. So we're right on written description and enablement because the only invention here is narrow and precise, and it's valsartan plus the cubitril in a one-to-one ratio. And we described and enabled a person of skill in the art to practice that combination therapy. And the evidence was, and the patent shows, that the advance here was that that combination therapy, however, in whatever form it's in, is what the advance was. That's what a person of skill in the art would care about. They would care about the two API, not the form it took. So that's our first argument on both written description and enablement. It suffices for both for those reasons. And then we have two other arguments, also suffices, which is on written description, the structural elements test. The valsartan and cubitril in a one-to-one ratio, a person of skill in the art, our expert testified, would be able to readily distinguish, you know, what's within and without the claim because what's within the claim is if it has the structure of valsartan and the structure of cubitril in a one-to-one ratio, it's within the claim. And if it doesn't, it isn't. And that meets the structural features test. Can I get to my second argument on enablement? You are into your rebuttal time, which you can save or use now. Ten seconds on the second reason for enablement, which is this Court has held, and they don't challenge this law. I mean, they asked for en banc review, but they concede that under Hogan and this Court's cases, we don't have to enable future arising improvements as long as our patent was enabled at the time. And the district court made factual findings that are right and can't be challenged, that a person of skill in the art would not be familiar with solid-state chemistry, would not have read. I understood the district court is construing Chiron to say you live on enablement because under our jurisprudence on enablement, you can cover after arising technology and you do not need to enablement. Now, I don't know that that's correct, but I understood that as being its analysis on enablement. Do you disagree? No, I understand his analysis to being that you don't have to enable future arising forms of a new improvement. You don't have to enable. You can't retract. Even if it's covered by the claim. Yes, and our case is easier than that. Our case is easier than that, and that's why he misunderstood our first argument. Our case is easier than that. Do you think that's correct, the correct reading of our jurisprudence? Yes. So I think all these cases have to be taken on their facts and the claims at issue, and so there's not, like, one broad rule, and we don't need a broad rule here to prevail. But, like, U.S. Steel was a crystalline polypropylene, and the inventors had invented a crystalline polypropylene. The infringers said, no, no, ours is better. Ours is a better crystalline polypropylene, and this Court held, both as to written description and enablement, that the original crystalline polypropylene was both adequately described and enabled and this one infringed, and that was perfectly fine under the law because the point of 112 is to allow people to know what you've invented and let people improve on it. Before your time runs out, just two quick questions. One, am I correct that the patent expires at the end of the year? And, two, what is the status of the current proceedings in this case? So, well, this is on a final judgment, this appeal. The patent does expire in January, but Novartis is entitled to a six-month period of exclusivity until July 15th. That's an FDA exclusivity. FDA exclusivity. Not a patent exclusivity. That's right, Your Honor. And so because of that and because this Court has said, you know, you might not be able to get patent damages for that period, we would request, if the Court is going to agree with us, that you would keep your injunction in place until the FDA is ordered to reset their due date until the 15th. But what about this case? I mean, if we reverse here, as you're asking us to do, then this case is still alive. Something's going to be done, presumably, right? If you reverse here, then they've admitted infringement and our patent is valid and they should be entitled under 271E4 to have the FDA reset their approval date until July 15th of 2025. And so that's why I would ask that you, like, process occurs. As you said, FDA. But the patent would still have expired in January. Yes, but this Court has held that as long as we're entitled to the exclusivity, that this case wouldn't be moot, if that's what you're getting at. Is that what your question is, Judge Lurie? Your time has expired. Thank you, Your Honor. Does our resolution of this case, it has a potential of mooting? But what does it do to the preliminary injunction? And I know we're going to address that later, but just real quickly, if you could. So if you rule for us here, like, we would still need an injunction in the 918 case because they've shown every interest in launching prematurely. We would still need an injunction in the 918 case because they have different lengths of periods and there's the issue about getting the FDA to reset the approval here. And that patent has a longer period of expiration. That patent has two years left. Yes, Your Honor. We'll give you three minutes for rebuttal. I appreciate that, Your Honor. Mr. Roccozzi, is it? Yes, Judge. May it please the Court, William Roccozzi for MSN. This is a classic case of claims that preempt the future before it has arrived precisely by claiming a vast genus of all possible ways, including as yet identified ways, of administering these compounds in combination, including new compounds like complexes that hadn't been invented and hadn't existed yet. Ms. Trent said exactly the opposite, as I understood her, that the claim construction, or at least what should have been the correct claim construction, would not be so broad as to include complexes. Was it your view? What was your view of what the district court's claim construction was? Our view is just as he held in the opinion, which is these are genus claims. These are broad genus claims directed to all ways of administering the compounds, including physical mixtures and millions of complexes. That is the construction Novartis asked for. These are not genus claims where one claims a broad collection of compounds. This is very simply a composition reciting two specified compounds, both of which are described as being in a composition in the specification. These aren't genus claims. It's actually more than that, Your Honor. It's actually much broader than that. To your earlier question, it's directed to the composition of Secubitrol and Valsartan that is administered in combination to treat heart failure in effective amounts. Well, the administration tale in this claim recites a step, but this is a composition claim. And a composition claim isn't defined by what one does with it later. But it's been defined, Your Honor, and construed at Novartis' request. The full scope of it. Can you give me the citation to Novartis' request of claim construction that included complexes? Yes, Your Honor. In A2006-07, Novartis asked that the Court give the claims their full scope at A2003 to literally cover later embodiments. Can you give me the page number again? 2003 as well as 2006-07. They asked that the Court give the claims their full scope to literally cover later embodiments like Entresto, which is an admitted complex. It is a new compound. It is not Secubitrol or Valsartan. The District Court construed these as genus claims to include complexes. Dr. Klebanoff agreed. He applied a genus claim analysis under Ariad. Novartis applied a genus claim analysis both in their opening and their closing arguments. Ariad had a broad genus, described a broad genus. And if I recall, it might have even been by function. It was, Your Honor, but the Court has never said that Ariad only applies to functionally defined genuses. It applies to genuses in general. In here, Dr. Stee testified unrebutted that this genus is vast. It includes both physical mixtures. It includes millions of complexes, co-crystals, co-salts, co-amorphous forms, free acids, salts. Every unit dose form, that testimony was unrebutted. Millions of complexes and new compounds are covered here, which are not Secubitrol and Valsartan. And here's the key. It is unchallenged in this case that as of 2002, the skilled person, even with the patent in hand, would not have contemplated, foreseen, or even thought of complexes and could not possibly have visualized or recognized them. That's because the order hadn't developed at that point, at that date, to contemplate complexes. Precisely. Or to contemplate chemical art. Precisely, Your Honor. Chemical art inventions. And was your position at claim construction that complexes are not included? Complexes based on the claim construction are included. We ask at claim construction that they not be. Novartis argued that they are. The district court, Judge Stark, construed them to include complexes. The district court at trial, Judge Ainsworth. Okay. So what if we, hypothetically, what if we were to reconstrue the claims and saying complexes are not included? We would say. And where does that leave you? We would say, Your Honor, that that ship has sailed. No one has asked to overturn the claim construction here. We haven't asked. Novartis hasn't asked. It's unchallenged. And so under that claim construction. Well, they told me the claim construction was plain and ordinary meaning. I think that's what they said here today. Absolutely, which we think proves our point. Because it is to a broad genus of every possible way of administering these compounds and combination, including complexes. Well, let me ask you again. If we were to construe the claims differently, what does that do to your stipulation? Is it correct? You stipulated to infringement presumably based on what you construed as the construction, including complexes. I don't believe that the stipulation was limited in that manner, Your Honor, which is why we have not asked to overturn the claim construction here. We haven't challenged it. That's a problem for you, right? If our panel decides that the claims ought to be construed more narrowly under a plain and ordinary meaning, then you've already stipulated to infringement. So that's. Well, several responses, Your Honor. You don't need to change the claim construction and you shouldn't change the claim construction. But you ignored my hypothetical. So accept my hypothetical and answer it. Your Honor, I would have to know what the construction was to know. But we stipulated to infringement below before trial to narrow the issues. And so we haven't challenged that claim construction now. And we don't believe we need to. But we did stipulate to infringement. I'm not disputing that. I don't see how you can call this a genus claim, claiming loads and loads. I don't remember what your adjective was, but certainly it was like immense. This is a composition, of course, comprising. We know what comprising is, but that's not the point here. The recitation is two specific named compounds. Now, yes, maybe there could be a specific complex between them rather than being two separate compounds, but that's not a vast collection of compounds constituting a genus. Well, I did say vast, and I'm not sure if I said immense. But those aren't my words. Those are the undisputed testimony of Dr. Steed at trial. That these claims cover millions of compound of complexes and new compounds. And that's not disputed. That genus, whether we call it a genus or not, Judge Hulery, doesn't matter. You don't need to call it a genus to decide this case. The fact of the matter is the claims cover, at Novartis' request, millions of complexes. Well, cover is an infringement concept. The point here is written description. But here they're the same, Your Honor. They're coextensive. They are saying these claims cover and include and encompass. Well, again, you include, you get back to cover and encompass. The point is description of what's claimed. But for written description, this Court also looked at claim scope. And there's no dispute the claim scope is broad, whether you call it a genus or not. It includes these complexes. They told the FDA and the PTO for their PTE application that, in fact, this claim broad, given that these are complexes, that knows a field quite a bit. I'm sorry, Judge. I didn't hear the first part of your question. But we're dealing with complexes. So it's not that broad of a drug, Your Honor. It's actually very broad. There are many, many complexes that would be covered. Their own expert testified that any linked, non-covalently linked compound would be covered here. And that easily reaches into the millions of complexes that would be covered. The claim recites two complexes, right? The claim recites two compounds that are administered in combination in effective amounts to treat heart failure. The fact that they're compounds with their own unique pharmaceutical structure or chemical structure, isn't that self-limiting and respond to your argument? The problem, Your Honor, is if we look at this court's area test for written description. There has to be either sufficient representative species. Not even Novartis is arguing that. They can see there aren't. Or structural features common to all members of the genus or collection, such that the skilled person could visualize them. And that's a problem for them here. Because, as you heard, it doesn't matter what their expert, Dr. Klevenoff, can spot today looking at those two structures. What matters is our skilled person back in 2002. Should I be concerned that if we buy into your argument that original claim language has to describe complexes, otherwise you have a lack of written description, that that does away with the entire phenomena of later rising technologies, which is a very important element of innovation? You absolutely do not need to worry about that, Your Honor, because this isn't like any of the cases they cite, U.S. Steel, Banner, or Visor. Those were all to one compound or one crystalline structure. This is not. This case is about a brand new compound. The complex is not Valsartan. It is not Secubitryl. It is its own chemical entity, TVSH or TVS. So this is not similar to any of those cases where you have, for example, a base compound and its solvates, or a base compound and its enantiomers. This is nothing like that. In all those cases, the skilled person could easily visualize all the members of that compound genus, whether it's the compound and solvates, salts, or enantiomers. In all the cases that was undisputed, this court held, for example, in Banner, no problem. The skilled person could visualize all the solvates in that genus. In fact, the genus there was described in the specification with specificity by structure and how to make the solvates, and everybody knew how to make solvates. This is a completely different case. We have a brand new chemical entity here that our skilled person would not recognize, contemplate, or envision as of 2002, and that's the key. Remember, the skilled person, according to Novartis in the district court, is a medical doctor or a Ph.D. medicinal chemist that knows nothing about complexes. And so the inquiry under Arian is, that skilled person, looking at the four corners of the specification in 2002, could he or she visualize all the members of the genus covered by this claim, including complexes? The record is undisputed that she could not. She wouldn't know about them. She couldn't contemplate them. Couldn't envision them. Couldn't spot them in a lineup. And that fails the area test, because there aren't structural features here. To your point, Judge Hulery, it's not enough just to have the structure of Valsartan and the structure of Secubitril in the specification. As the district court held, that just tells you what the physical mixture is. But it doesn't tell you anything about whether the skilled artisan in 2002 could envision complexes or new compounds from those structures. They didn't recite complexes in the claim. Correct. They did not. And so complexes needn't have been described. But their claim covers and claims complexes. That's infringement. This is written description. But, Your Honor, claim scope is what we look at for 112. And I mentioned earlier, and I apologize if I didn't get it out, they told the patent office that this patent claims complexes, claims entresto, which is a complex. This isn't some added feature or some unclaimed feature. Does your client sell a complex? To my knowledge, all parties are seeking to make a complex. Yes, Your Honor, which is why they wanted this broad genus claim scope, so that they could capture all of the generics making the complex. I take Ms. Maynard's assertion, as I understand it to be, that what we're ignoring in this discussion is the difference between claims and claiming and infringement, that something could be claimed more narrowly. That doesn't mean necessarily that that disposes of the ultimate decision of analysis of infringement later on, if it includes other stuff like complexes. I understood her to be making that assertion, that they were claiming not complexes, but just compounds. That's what they needed to describe and embody. And then later on, that doesn't necessarily preclude an assertion of infringement, even if complexes are included in the infringing product. That's what I understood to be her presentation. And I don't think there's anything inherently wrong with that under the law. Well, Your Honor, I do because I think this is on all fours with Chiron. This Court looks at claim scope and the breadth of the claims as construed when evaluating them under 112. In Chiron, for example, the claims were construed to cover structural chimeric antibodies. Those did not exist and had not been invented yet, and so obviously they couldn't be possessed and they could not satisfy adequate written description. The same is true here. Chiron is a new matter case. It involved the introduction of new matter. In part, it did, Your Honor, but it also involved claims. Doesn't that just distinguish it or make it inapplicable to what we're looking at here for written description? Well, for the written description, Your Honor, it's the first Chiron application in 1984 that did not have the new matter in it. That was the original application they tried to draw or claim priority to. And as far as that application went, obviously there was no description of chimeric antibodies, which is the claim construction they sought and got. And so for that reason, they couldn't possess them because they didn't exist. I have one remaining question for you. Yes, Judge. Wouldn't you agree that in 2002, complexes were a relatively unknown concept? I do not agree with that. They were not an unknown concept, which goes to this Court. I said relatively. They were generally known since the 1700s. Novartis admitted that. Their expert admitted that. The district court found that. So they were not an unknown concept. So similar to your plant genetics case, where this court said, if it's not an unknown concept, you do have to enable it, even if it is later arising. We submit that's the case here, and the district court improperly and unduly restricted the skilled person's knowledge because a Ph.D. chemist would at least generally know about complexes, especially because the specification here is full of solid-state teaching. And the chemical art field, was that a well-known field in 2002? Complexes were not a well-known and developed field. They were generally known, so they would have been nascent. It would have been very early on, so they still would have been an unpredictable art, which would require even more specific teachings to enable them, which obviously they didn't do here. If that's the case, why would we require a person of ordinary skill to describe the complex in the written description? Our position is that it should have been described. If complexes are generally known, and we think they were, not sacubitryl-balsartan complexes, but complex in general were known, our position at trial was that's nascent technology that would have required a description, and our skilled person, a Ph.D. chemist, would have very least known about complexes in general. It wasn't an unknown concept. And under plant genetics, that technology, later arising or not, would have had to be enabled, and nothing about Hogan that Novartis cites precludes Novartis from having to enable that technology. What's a complex? An association of two compounds, say, by hydrogen bonding? It's any... It's less than a covalent bond, but perhaps hydrogen bonding. It's anything less than covalent, Your Honor. Linkage, it is a new compound, whether hydrogen bonding, ionic bonding, hydrophobic interactions, hydrophilic interactions, Van der Waals forces, but it is its own chemical entity and compound, different from sacubitryl and balsartan in isolation in the physical mixture. You wouldn't call ionic bonding a complex. Sodium chloride is ionic salt, and that's not a complex. Any non-covalent bonds putting two moieties together can be a complex, Your Honor. And there's no dispute here that TVS or TVSH, it is in fact a complex. It is a different compound from sacubitryl and balsartan on its own. There's no dispute in the record about that. Thank you. Counsel, we have your argument. Thank you, Judge. We do believe the injunction should be lifted. Every day of delay is harming MSN here, which is ready and willing to launch. They are prepared. They're losing their first mover advantage every day of delay, so we would request the injunction to be lifted as soon as possible and this Court issue a decision on the merits in expedited fashion. Thank you, Counsel. Thank you, Your Honor. Ms. Maynard. Thank you, Your Honor. He's up here telling you that this patent claims complexes, but it does not. That's the next case. Can I turn you to the district court's opinion at Appendix 27, where he has a couple of paragraphs that deal with this, but at the bottom he says the parties do not dispute that the claims at issue are directed to a genus of combinations of the two drugs, which includes complexes of the two drugs. Was that your position before the district court that the claims are directed to those? Yeah, we do dispute that. That's a quote from the defendant's brief below. To answer your question that you asked, my friend, the claim construction that was requested is at A2103, and you can see that we requested the precise claim language and the Court adopted the precise claim language. And, Judge Prost, this invention is like we invented a steering wheel, and when you put that steering wheel in the complex that is a car, the complex infringes, but the car is not the claimed invention of the first patent. This is just like that. The visualize and recognize test is also met here, because the point of the visualize and recognize test, that originated in this Court's decision in Eli Lilly, and it was carried over in Ariad, and the point is a person of skill in the art, can they look at something and tell whether or not it infringes? And the answer our experts said, and it's uncontested, Dr. Klibanoff said, yes, a person of skill in the art can readily visualize the chemical structure of balsartan, the chemical structure of succubitril in a one-to-one ratio, even if you later take that and put it in all these complexes he's talking about, which aren't claimed in this patent. Complexes are in the next case. What were you showing us, 2104? 2103 is the box of the construction of disputed terms, and you can see the top box is Novartis's proposal, which is just the plain text, and the middle box is the defendant's proposal. Well, but it says on 2104, the intrinsic record is silent on whether it must be separate or complex, as Novartis points out. Nothing in the specification limits the claims. Indeed, the specification discloses, blah, blah, blah. I mean, at a minimum, there's a basis for understanding why the district court may have been confused about how broad your claim construction was. We explained it in the claim construction hearing at page A2006, 2006, in the middle, where we said, namely, the non-covalent interaction between balsartan and succubitril is a distinct invention. These are unrecited elements. It is not necessary to describe features that are not claimed. So they are not elements of the claim combination, this patent. They are not recited. And so unlike in Chiron, the difference there was a priority difference. It was they were trying to come back and say, we earlier invented. We're not trying to get that advantage. We have different patents on the complex. They have different priority dates. We didn't try to get the priority date for this patent. This is a basic invention of A plus B plus C, and when you add D to this comprising claim, it infringes, but it didn't need to be recited or enabled. That's consistent with this Court's holding in Pfizer, and particularly in USDO, where they make this distinction. Thank you, counsel. The case is submitted.